IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

MARINA Y. ASANOV HUNT                                              PLAINTIFF

VS.                                                        NO. 1:03CV654-D-D

ALEXANDER N. ASANOV and
BIOELECTROSPEC INC.                                              DEFENDANTS

## OPINION SANCTIONING DEFENDANTS AND DISMISSING CASE

Presently pending is the sua sponte jurisdictional issue, numerous motions by the Defendants, and the Plaintiff's motion for contempt and sanctions. The Court has previously issued an order requiring the Plaintiff to show cause as to federal jurisdiction. The Plaintiff has submitted her response. Upon due consideration, the Court finds that this case should be dismissed pursuant to the domestic relations exception to diversity jurisdiction. The Court further finds the Defendants' actions justify the imposition of sanctions.

### A. Factual Background

Briefly, the Plaintiff is the former wife of the Defendant Asanov. The Court is not able to determine when the Russian couple was married. However, it is clear that they remained married during 1997 as evidenced by their unified efforts to incorporate BioElectroSpec. The corporation was created on September 10, 1997. Listed on the certificate of incorporation as initial directors are both Alexander N. Asanov and Marina Y. Asanov. Sometime near June 2001, the couple was divorced in Russia. The Russian divorce decree was subsequently recognized as valid by the Chancery Court of Oktibbeha County, Mississippi on December 6, 2001. Unfortunately, the Chancellor specifically refused to decide any issues other than child custody and support.

The Plaintiff initiated this action on December 3, 2003. On March 1, 2004, the Defendants filed their first motion to dismiss which was later denied. In May 2004, the Defendants were warned

by Magistrate Judge Jerry A. Davis in an order that "personal attacks on counsel or the opposing parties" would not be tolerated. In June, the Defendants filed a purported notice of interlocutory appeal. On September 8, 2004, the Fifth Circuit dismissed the interlocutory appeal. Also, in February 2005, Judge Davis issued an order compelling the Defendants to respond to discovery and ordering the Defendants to pay the Plaintiff's reasonable attorney's fees associated with obtaining the order. The Defendants were given the opportunity to object to the fees but failed to do so. However, the Court is now advised that the Defendants never paid the reasonable fees and expenses as ordered by Judge Davis. Since that time, the pro se Defendants have filed countless motions and appeals of Judge Davis' orders.

On March 29, 2005, the Court issued an order requesting that the Plaintiff show cause, if she could, why federal jurisdiction was appropriate in light of the "domestic relations exception" to diversity jurisdiction. The Plaintiff has submitted her brief and for reasons discussed below the Court finds that the domestic relations exception bars further consideration of this dispute.

### B. Federal Jurisdiction

These pro se Defendants take issue with the Court's administration of this dispute at every interval, but particularly and most recently why a show cause order was not issued earlier. Perhaps the Defendants' consternation arises out of their own limited legal knowledge and understanding. It is true that from the beginning, the Defendants vehemently opposed this litigation. However, as noted in a prior opinion, much of the Defendants' opposition was premised on personal rather than legal grounds. Hence, the moving Defendants failed to sustain their burden of proof and the Plaintiff's complaint easily withstood motions to dismiss which require only a possibility of stating a claim for relief. See Fed. R. Civ. P. 12(b)(6). Nonetheless, the Court is under a continuing obligation and duty to question and examine the basis for jurisdiction. Fed. R. Civ. P. 12(h); Int'l

Ass'n of Machinists & Aerospace Workers Local Lodge 2121 AFL-CIO v. Goodrich Corp., __ F.3d __, __, 2005 WL1168418 at *3 (5th Cir. May 18, 2005). Such was the purpose of the show cause order and the subject of this opinion addressing the applicability of the domestic relations exception.

The Supreme Court in Ankenbrandt v. Richards, 504 U.S. 689, 693-704, 112 S. Ct. 2206, 2209-15, 119 L. Ed. 2d 468 (1992), discussed and reaffirmed the existence of the domestic relations exception to federal diversity jurisdiction. The court retraced the origins of the exception and determined that Congress implicitly adopted the exception when the Judiciary Act of 1789 was amended in 1948. Id. at 698-701. The domestic relations exception precludes the exercise of federal jurisdiction based on diversity where a case involves the issuance of a divorce, alimony or child custody decree. Id. at 704. In Ankenbrandt, the petitioning mother sought, on behalf of her children, damages in tort from their father and his female companion for physical and sexual abuse. Id. at 691. The district court dismissed the case based, in part, on the domestic relations exception. Id. at 692. The Fifth Circuit affirmed dismissal, and the Supreme Court reversed finding that the exception did not involve a decree, alimony or child custody. Id. at 692, 704. Rather, the Court distinguished, the defendants "committed torts against L.R. and S.R." and thus the exercise of federal diversity jurisdiction was proper. Id. at 704.

Since Ankenbrandt, courts have declined to exercise jurisdiction over domestic relations issues reasoning that (1) the state courts have greater expertise and interests in domestic matters; (2) such disputes often require ongoing supervision, a task for which the federal courts are not suited; (3) piecemeal adjudication of such disputes increases the chance of different court systems handing down incompatible decrees; and (4) such cases serve no particular federal interest while crowding the federal court docket. Jagiella v Jagiella, 647 F.2d 561, 564 (5th Cir. 1981) (former wife sued seeking alimony and child support arrears, court denied request for modification of divorce decree). The Fifth Circuit, interpreting the domestic relations exception narrowly, has opined "a case should

not be dismissed merely because the parties are from the same family and a domestic dispute forms part of the context of the litigation." Rykers v. Alford, 832 F.2d 895, 900 (5th Cir. 1987) (dismissing father's claims against mother for deprivation of parental rights and malicious prosecution). Rather, "the decisive factor is not the formal label attached to the claims, but the type of determination the federal court must make to resolve the case." Id. at 900. In Jagiella, the court held "traditional abstention did not prevent our exercising jurisdiction in a suit between former spouses for damages caused by the breach of a voluntary separation agreement, involving little more than a private contract to pay money." 647 F.2d at 564.

Exercise of jurisdiction is proper, where there are "no questions of custody or parental rights, no pending state court action or agreement to litigate in state court . . . no threat that the former spouses will seek to play one court system off against the other" and no "strong state interests in the adjudication of this suit or any special competence on the part of state courts." Couch v. Couch, 566 F.2d 486, 487-88 (5th Cir. 1978) (citations omitted) (wife sued former husband for breach of a voluntary separation agreement); see Congleton v. Holy Cross Child Placement Agency, 919 F.2d 1077 (5th Cir. 1990) (action within domestic relations exception where birth mother sought declaratory judgment as to validity of contract surrendering her parental rights). However, federal jurisdiction is not found where claims are directly and intricately involved in on-going domestic relations controversy pending in state court. Goins v. Goins, 777 F.2d 1059, 1063 (5th Cir. 1985) (wife sued former husband for withholding custody, proper to deny jurisdiction; equity required that all claims be adjudicated in same court system avoiding piecemeal litigation, federal interference with state court and contradictory rulings); cf. Fenslage v. Dawkins, 629 F.2d 1107, 1108-09 (5th Cir. 1980) (affirming jurisdiction where wife sued her former husband for violation of a state court child custody order, reasoning that the wife sought damages for a violation and not modification of

a decree).

In Brown v. Hammonds, 747 F.2d 320, 322 (5th Cir. 1984), the husband filed a diversity suit for breach of an antenuptial agreement demanding a judicial determination of the parties' property rights. Dismissing the case, the Court explained "descriptive of the present suit, 'stripped of all its verbiage, this is no more– and no less– than a domestic relations case . . . The language of the complaint shows this to be part of an on-going series of disputes centering around the dissolved but still stormy [marital] relationship,' and thus falling within the 'judicial exception to federal jurisdiction [that] has been created with respect to intra-family feuds'." Id. at 322 (citations omitted).

In another similar case, Davis v. Davis, 588 F. Supp. 485 (N.D. Miss. 1983), this district recognized the domestic relations exception. The Davis plaintiff sought to set aside conveyance of real property pursuant to a settlement agreement which was confirmed and incorporated in a divorce decree entered in chancery court. Id. at 486. The court reasoned that "federal courts should abstain from entertaining domestic relations actions on the basis of comity and deference to the state courts." Id. Ultimately, the court declined to exercise jurisdiction finding that the conveyance was an "integral part of the property settlement" which could not be set aside without modification of the divorce decree. Id.

Though the Chancellor in this case inexplicably refused to divide the marital property and no formal property settlement exists, the Court finds that other factors militate against extending jurisdiction. Obviously, state courts have far greater experience and interest in dividing assets accumulated during a marriage. Secondly, as has been mentioned, there is an appeal currently pending at the Mississippi State Supreme Court presumably related to the parties' divorce. Should the Court retain jurisdiction, it is conceivable that two different and conflicting judgments could result. Finally, the Plaintiff asserts that this is merely a contractual dispute as to the ownership of

the Defendant BioElectrospec. In support the Plaintiff has provided Russian documents and the incorporation certificate for BioElectrospec demonstrating at least her involvement in establishing the corporation. Clearly, under either the doctrine of equitable distribution or, less convincing, an agreement independent of the marriage, it appears that the Plaintiff would be entitled to some beneficial interest in BioElectrospec.

Nevertheless, despite the Plaintiff's assertion of a contractual agreement apart from the marriage, there is no federal interest in adjudicating a dispute of this nature. Although the Plaintiff's characterization of the dispute has some appeal, in the absence of a formal written agreement or stock certificates, resolving the dispute would require the Court to delve into the now defunct marital relationship. Moreover, the interests of each party would be best served by having all the marital assets divided in one proceeding– a task that state courts are well versed in– rather than the piecemeal division this case would present. Therefore, in the interests in comity and deference to the competency of state courts to adjudicate domestic issues, the Court declines to exercise jurisdiction over this dispute arising out of the dissolved but still stormy marital relationship. Thus, this case falls within the domestic relations exception to diversity jurisdiction and should be dismissed.

*C. Sanctions*

The Court would like to take this opportunity to condemn the <u>pro</u> <u>se</u> Defendants for their inexcusable behavior both in the form of oral and written statements. The Defendants should take heed, the Court at all times takes seriously and endeavors to protect and uphold the laws of this Country. Such a task is made more difficult, however, when persons and entities not familiar with the law and legal procedure attempt to engage in litigation without the assistance of experienced

counsel.[1]

Additionally, the Court is not amused with the Defendants' repeated unfounded personal attacks directed at Magistrate Judge Davis. The Defendants allude to the existence of a bias relationship between Magistrate Judge Davis and Plaintiff's counsel. This perceived relationship is likely attributable to the Defendants' lack of legal education and procedural knowledge which required more interaction between the Court and Plaintiff's counsel. Rather than maintaining composure when faced with adverse decisions, the Defendants chose to express their frustration by suggesting Judge Davis is corrupt and incompetent. The Court has no tolerance for the Defendants' behavior and the arrogant manner in which they chose to conduct themselves. Though the Defendants' comments deserve no further attention, Magistrate Judge Davis has served the judiciary for many years and is a man and judge whose integrity, character and abilities are above reproach. The Defendants' potentially damaging comments and baseless allegations are certainly not consistent with the professional behavior the Court expects from all litigants.

Moreover, it has been called to the Court's attention that Defendant Asanov recently sent a letter to Plaintiff's counsel. While the contents of the letter are not worthy of repetition, it is replete with personal attacks if not overt threats directed at the recipient in direct violation of Magistrate Judge Davis' order dated May 26, 2004. Such a demonstration is certainly not typical of an educated individual or sophisticated mind, but is, nonetheless, suitable for the imposition of sanctions. Willy

---

[1] The Defendants take issue with Judge Davis' refusal to provide them with an attorney. The Court summarily finds that the denial of appointment of attorney was not clearly erroneous or contrary to law. Rather, appointment of counsel in civil cases is reserved for very limited and unique circumstances not found in this case. See Wendell v. Asher, 162 F.3d 887, 892 (5th Cir. 1998) (no automatic right to appointment of counsel in a civil rights case). Furthermore, if, as the Defendants assert, national security is being threatened or compromised by the institution of this action or any other, the Defendants should promptly contact the United States Attorney General who is charged with protecting such interests.

v. Coastal Corp., 915 F.2d 965, 966-68 (5th Cir. 1990) (courts possess inherent power to impose sanctions irrespective of the existence of subject matter jurisdiction); NASCO, Inc. v. Calcasieu Television & Radio, Inc., 894 F.2d 696 (5th Cir. 1990) (Rule 11 and 28 U.S.C. § 1927 do not bar district court from assessing fees against a party under its inherent power).

The purpose of 28 U.S.C. § 1927 which authorizes sanctions against persons who multiply the proceedings in a case unreasonably or vexatiously is to deter frivolous litigation and abusive practices. Footman v. Cheung, 341 F. Supp. 2d 1218 (M.D. Fla. 2004) (sanctions may be warranted for a party's bad faith in delaying or disrupting the litigation, or hampering enforcement of a court order). Before ordering sanctions the court must ensure that the offensive actions were both unreasonable and vexatious, Fed. Deposit Ins. Corp. v. Conner, 20 F.3d 1376, 1384 (5th Cir. 1994); evidence of recklessness, bad faith or improper motive must be present. Houge v. Royse City, Tex., 939 F.2d 1249, 1256 (5th Cir. 1991). An award of attorney's fees under 28 U.S.C. § 1927 is committed to the sound discretion of the court. Thomas v. Capital Sec. Serv, Inc., 812 F.2d 984 (5th Cir. 1987). Such an award should not be made without fair notice and opportunity to be heard. Roadway Express Inc. v. Piper, 447 U.S. 752, 767, 100 S. Ct. 2455, 2464, 65 L. Ed. 2d 488 (1980); Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc., 38 F.3d 1414, 1418 (5th Cir. 1994) (hearing not required where conduct occurred in the presence of the court and the court is familiar with the parties and the litigation).

As identified infra, these Defendants have filed numerous disingenuous motions and appeals, badgering the Court with these various motions without a basis in law or fact in an attempt to retard the process of litigation. The Defendants have also attempted to impugn the integrity of the Court and attacked the character of not only a Federal Magistrate Judge but also the character and

professionalism of opposing counsel. It cannot be gainsaid that the Defendants' conduct alone is sufficient for assessing sanctions. Yet, these Defendants have previously been warned that any further personal attacks would be subject to sanctions. Despite the warning, the Defendants persisted with flagrant violations of the Court's order.

The Court finds that sanctions are necessary to deter and punish these Defendants for their aberrant behavior directed at the Court, opposing counsel and the opposing party, their blatant disregard for Magistrate Judge Davis' orders dated May 26, 2004, and February 17, 2005, and for filing over forty motions most of which have absolutely no legal basis.[2] Given the Defendants' intolerable behavior, specifically vexatiously filing a barrage of motions/appeals for purposes of harassment and unnecessary delay resulting in increased costs; and repeatedly lodging wild and unsubstantiated personal allegations against Magistrate Judge Davis. There can be no doubt that the Defendants' only motive was wholly improper and departs from all known decorum. The Defendants' bad faith is evident.

Consequently, the Court finds that the Defendants shall be sanctioned in accordance with the

---

[2] Most of the Defendants' motions are completely frivolous but nonetheless have required the Court's attention. For example, the Defendants' have repeatedly filed motions to dismiss the entire case because national security was somehow inexplicably being threatened; motions to have the Plaintiff submit to a psychiatric evaluation though her mental state is in no way implicated by the facts of this case; absurd motions to disqualify Judge Davis; and strangely a motion to reconsider the show cause order forming the basis of this opinion which required nothing of the Defendants except to refrain from filling any extraneous briefs– apparently too great an expectation because several of the Defendants' motions and/or appeals were filed after the Court ordered a stay of all matters not related to the jurisdictional issue. Finally, there are numerous unfounded magistrate appeals that are simply a result of the Defendants' lack of knowledge or understanding regarding the rules of civil procedure and fundamental legal standards under which all courts operate. These appeals are fraught with misinformation, erroneous interpretations of the law and misapplication of basic procedure. Also noteworthy, there were many more submissions to the Court not filed with the clerk and not reflected in the record.

Court's February 17, 2005, order which required the Defendants to pay the Plaintiff's reasonable attorney's fees and expenses. The Plaintiff submitted an itemized list of fees and expenses. In the absence of the Defendants' timely objection thereto, the amount of $821.00 is deemed reasonable. Hence, for unreasonably and vexatiously multiplying the proceedings in this case, the Defendants' shall be sanctioned $821.00 plus another $179.00 for a total amount of $1000.00 payable to the Plaintiff within ten days of the date of this order.[3]

### D. Conclusion

Notwithstanding the existence of complete diversity and the requisite amount in controversy, this case represents and involves a purely domestic matter best resolved by state courts. Hence, the Court declines to entertain the dispute pursuant to the domestic relations exception to federal diversity jurisdiction. Furthermore, in light of the Defendants' unreasonable, vexatious and often bizarre behavior, sanctions are appropriate and the Defendants' are ordered to pay the Plaintiff's reasonable attorney's fees and expenses as outlined above.

A separate judgment in accordance with this opinion shall issue this day. This the 13th day of June 2005.

/s/ Glen H. Davidson
Chief Judge

---

[3] In accordance with Fifth Circuit precedence, no hearing is required. This Court is unfortunately intimately familiar with the present litigation and the parties involved.